UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

DARNELL WALKER,

                      Petitioner,                         **DECISION AND ORDER**
                                                  No. 02-CV-0611

     -vs-

GLENN S. GOORD,  Commissioner,
N.Y.S. Department of Correctional Services,

                      Respondent.
_____

## INTRODUCTION

Petitioner, Darnell Walker ("Walker"), filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction in Monroe County Court on charges of second degree (felony) murder and first degree robbery. The parties have consented to disposition of this matter by the undersigned pursuant to 28 U.S.C. § 636(c).

## FACTUAL BACKGROUND AND PROCEDURAL HISTORY

On October 1, 1995, eighteen-year-old Robert DeLancy ("DeLancy") was stabbed and killed during a robbery at his apartment, which was used as a drug house. An eyewitness, fourteen-year-old Latoya Scott ("Scott"), testified that Walker was a regular visitor to DeLancy's apartment and had arrived alone shortly before the incident. Marvin Coffie ("Coffie") and Philip Baker ("Baker") arrived soon thereafter and forced their way into the apartment. As they struggled with DeLancy at the door, Scott saw Walker grab a knife and push DeLancy down on the floor. The three men then converged on the victim. According to Scott, Walker stabbed DeLancy. All three then took money and cocaine off his person. DeLancy died of a stab wound

-1-

to the heart.

Upon his arrest, Walker initially denied any involvement in the crime and claimed only to have been a witness. Eventually, however, he admitted that he, Coffie, and Baker had planned the robbery together. Walker conceded that he "set up"the victim and pulled him away from the door so that the co-defendants could gain entry to the apartment, but he insisted that it was Coffie who actually stabbed the victim. Co-defendant Baker, who had entered into a plea agreement, testified against Walker at trial and attributed the actual stabbing to Coffie. Co-defendant Coffie similarly entered into a plea agreement but did not testify at Walker's trial. The returned a verdict convicting Walker of second degree murder and first degree robbery as charged in the indictment.  Walker was sentenced to concurrent sentences of imprisonment, the longest of which was twenty-five years to life.

On direct appeal, the Appellate Division, Fourth Department, of New York State Supreme Court unanimously affirmed his conviction. *People v. Walker*, 278 A.D.2d 852, 717 N.Y.S.2d 440 (App. Div. 4th Dept. 2000). The Court of Appeals denied leave to appeal. *People v. Walker*, 96 N.Y.2d 869, 754 N.E.2d 1127, 730 N.Y.S.2d 44 (N.Y. 2001).

This petition for federal habeas relief followed in which Walker raises three claims for relief: (1) there was insufficient evidence to support the conviction; (2) his confession was involuntary; and (3) the trial court improperly limited cross-examination of a witness. For the reasons set forth below, the petition is denied.

## DISCUSSION

### Procedural Default

Respondent argues that Walker's insufficient evidence claim is procedurally barred. On

direct appeal, the Appellate Division stated that petitioner's insufficient evidence claim was "not preserved for [their] review[.]" *People v. Walker*, 275 A.D.2d at 853 (citing *People v. Gray*, 86 N.Y.2d 10, 19 (N.Y. 1995) (citing N.Y. Crim. Proc. Law § 470.05(2)). The court also held that "in any event" the claim "lack[ed] merit." *Id.* at 853-54 (citation omitted).  Respondent contends that the claim is precluded from habeas review due to the state court's reliance on a state procedural rule in denying the claim.

It is well-established that a federal court should not review a federal claim if the state court decision is based on independent and adequate state substantive or procedural law. *Coleman v. Thompson*, 501 U.S. 722, 728-31 (1977). Where, as here, "'the state court explicitly invoke[d] a state procedural bar rule as a separate basis for decision,'" federal habeas review is precluded unless the petitioner can show cause for the default and resulting prejudice, or that a fundamental miscarriage of justice will occur if the federal court does not consider the defaulted claim.  *Velasquez v. Leonardo*, 898 F.2d 7, 9 (2d Cir. 1990) (quoting *Harris v. Reed*, 489 U.S. 255, 264 n. 10 (1989)). In the present case, the state court's reliance on New York Criminal Procedure Law § 470.05(2), known as the "contemporaneous objection rule," constituted an adequate and independent basis so as to preclude federal habeas review of this claim *See Garcia v. Lewis*, 188 F.3d 71, 79 (2d Cir. 1999) ("[W]e have observed and deferred to New York's consistent application of its contemporaneous objection rules.") (citations omitted).

In his pleadings submitted to this Court, Walker has alleged neither cause nor prejudice for the procedural default. Furthermore, Walker has not adduced any new evidence which would demonstrate that he is "actually innocent" of the crimes for which he was convicted and therefore entitled to the "fundamental miscarriage of justice" exception. *See Dunham v. Travis*,

313 F.3d 724, 730 (2d Cir. 2002) ("[A]ctual innocence means factual innocence, not mere legal insufficiency. To demonstrate actual innocence a habeas petitioner must show that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence.") (internal citations and quotations omitted). Therefore, this claim is barred from federal habeas review.

## Merits of the Petition

### 1.      Involuntary confession

Walker contends that he was "deceived by the Interrogators, who provided outright lies to [him] in an effort to obtain a usable admission[.]" Petition at 9 (Docket #1). He claims that the officers' conduct was "so fundamentally unfair as to render [his] statements involuntary." *Id.*

The "ultimate issue of voluntariness [of a confession] is a legal question requiring independent federal determination." *Nelson v. Walker*, 121 F.3d 828, 833 (2d Cir.1997) (quoting *Arizona v. Fulminante*, 499 U.S. 279, 287 (1991)); *see also Nova v. Bartlett*, 211 F.3d 705, 707 (2d Cir. 2000); *Mincey v. Arizona*, 437 U.S. 385, 398 (1978) (holding that the Court is not bound by a state court's determination that a statement was voluntary; "[i]nstead, the Court is under a duty to make an independent evaluation of the record"). "'No single criterion controls whether an accused's confession is voluntary: whether a confession was obtained by coercion is determined only after careful evaluation of the totality of the surrounding circumstances.'" *Nelson*, 121 F.3d at 833 (quoting *Green v. Scully*, 850 F.2d 894, 901 (2d Cir.), *cert. denied*, 488 U.S. 945 (1988)).  Factors to be considered include the accused's experience and education; the conditions of the interrogation; and the conduct of law enforcement officials, notably, whether there was physical abuse, the period of restraint in handcuffs, and use of psychologically

coercive tactics. *Id.* (citing *Green*, 850 F.2d at 901). "'[S]ubsidiary questions, such as the length

and circumstances of [an] interrogation," or whether "'the police engaged in the intimidation

tactics alleged by the defendant," are entitled to the presumption of correctness.'" *Id.* (quoting

*Miller v. Fenton*, 474 U.S. 104, 112; 117 (1985)); *see also Towndrow v. Kelly*, 2000 WL

33743385, at *4 (N.D.N.Y. Dec. 20, 2000) (factual findings relevant to the voluntariness of a

habeas petitioner's confession made by the state court are entitled to the presumption of

correctness, and a petitioner must rebut this presumption by clear and convincing evidence)

(citing 28 U.S.C. § 2254(e)(1)).

     Following the hearing, the suppression court issued a written decision containing findings

of fact and conclusions of law. The suppression court found that Walker was arrested based on

two sworn deposition given by Scott implicating Walker in the murder of DeLancy[1] and that the

investigators first came into contact with Walker at the time of the arrest. The state suppression

court further found that Investigator Siersma read Walker his rights under *Miranda* and that

Walker waived them agreed to talk to the police. *Id.* at 3-4. The suppression court determined

that neither Investigator Siersma nor any other police officer made Walker any offers or

promises to induce him to give a statement. *Id.* at 4. The suppression court stated that the officers

did not "use[] any kind of coercion against Mr. Walker to waive his rights." *Id.*

     With respect to the interrogation, the suppression court found that Walker initially denied

any involvement in the murder. After being confronted with information contained in the

---

[1]At 6:10 a.m. on the morning after the stabbing, Scott gave a deposition under a false name (Tonya Brown)
and did not specifically implicate Walker in the incident. Later that morning, Scott gave another deposition with her
real name and birth date indicating that she in fact had seen Walker stab DeLancy. County Court Order at 3, attached
as Ex. F to Respondent's Appendix of Exhibits ("Resp't App.") (Docket #5).

depositions of Scott, a/k/a Tonya Brown, he told the investigator that he had gone to the apartment building where DeLancy lived because his (Walker's) ex-girlfriend, Tamika Quick ("Quick"), also lived there. *Id.* He ultimately admitted that he planned to help Coffie and Baker rob DeLancy of a large sum of cash and cocaine, but that he had no intention to have DeLancy injured or killed. Shortly thereafter, Investigator Siersma and his partner were made aware that an assistant public defender had called the police department and requested that the questioning cease. At that point, the interrogation stopped. *Id.* at 5.

Walker has not offered any evidence to rebut the state courts' findings of fact. Rather, he contends that the police improperly used a ruse during the interrogation, which had the effect of coercing him to give a confession. Investigator Siersma admitted at the suppression hearing that, in addition to telling Walker that Scott/Brown had given a deposition naming him as the stabber, he told Walker that DeLancy had uttered a dying declaration naming Walker as the stabber and that several other witnesses outside the apartment saw him flee with Baker and Coffie. H.33. Investigator Siersma admitted that the statements regarding the dying declaration and the other eyewitness were untrue. *Id.* For some reason, the trial court did not make any findings of fact with regard to the police deception. On direct appeal recognized that the police officers had lied to petitioner, but nevertheless held that the confession was voluntary:

> Although the police deceived defendant by falsely reporting that the victim gave a dying declaration implicating defendant, the deception was not so fundamentally unfair as to deny defendant due process [nor was it] accompanied by a promise or threat likely to produce a false confession[.]

*People v. Walker*, 278 A.D.2d at 853 (quotation omitted; alteration in original).

Now, on habeas review, Walker does not appear to challenge the factual findings of the trial court but rather contends that the investigator's falsehood regarding the victim's alleged

dying declaration was so fundamentally unfair that it rendered the confession involuntary. "A falsehood by a police officer, although deplorable, does not necessarily induce an involuntary confession." *McNeal v. Rdo*, 1988 WL 108440, at *4 (S.D.N.Y. Oct. 6, 1988) (holding that petitioner was not improperly induced to confess by police officer's attempt to convince him that the polygraph machine was infallible), *aff'd* 888 F.2d 126 (2d Cir. 1989), *cert. denied*, 493 U.S. 1030 (1990) (citing *Frazier v. Cupp*, 394 U.S. 731, 739 (1969) (police misrepresentations as to co-suspect's admissions not sufficient under totality of circumstances to conclude confession was involuntary); *Miller v. Fenton*, 796 F.2d 598 (3d Cir.) (lie about time of victim's death not "sufficient trickery" to overcome defendant's will), *cert. denied*, 479 U.S. 989 (1986)); *accord Mastin v. Senkowski*, 297 F. Supp.2d 558, 603 (W.D.N.Y. 2003).

The Court does not condone the police officers' tactic in this case of deceiving petitioner into thinking that the victim had made an inculpatory dying declaration; the Court agrees with the district court in *McNeal v. Rdo* that such a ruse is "deplorable." However, as the state court found on appeal, it was not accompanied by a coercive threat or promise which could have overborne petitioner's free will. Walker has offered nothing to rebut the presumption of correctness accorded to the state court's factual findings on this point which, indeed, are supported by the record. *Compare Lynumn v. Illinois*, 372 U.S. 528, 534 (1963) ("It is thus abundantly clear that the petitioner's oral confession was made only after the police had told her that state financial aid for her infant children would be cut off, and her children taken from her, if she did not 'cooperate.' These threats were made while she was encircled in her apartment by three police officers and a twice convicted felon who had purportedly 'set her up.' There was no friend or adviser to whom she might turn. She had had no previous experience with the criminal

law, and had no reason not to believe that the police had ample power to carry out their

threats."). Looking at the totality of the circumstances, as precedent dictates, *see, e.g., Nelson*,

121 F.3d at 833, the Court concludes that Walker's waiver of his constitutional rights and

subsequent confession were the result of his free and rational choice.

**2.      Improper limitation on cross-examination of witness**

Walker contends that defense counsel's cross-examination of prosecution witness Latoya

Scott, an eyewitness to the crime, was improperly limited. According to Walker, defense counsel

was prevented from "explor[ing] her history of drug usage, criminal proceedings, Family Court

proceedings and her relationship with Marvin Coffie, the actual assailant of Robert DeLancy."

Petition at 10 (Docket #1). On direct appeal, the state court found that defense counsel was given

"considerable latitude" to cross-examine that witness concerning her potential bias and that the

court's ruling did not deny defendant "the right of effective cross-examination." *People v.*

*Walker*, 278 A.D.2d at 853 (quoting *Davis v. Alaska*, 415 U.S. 308, 318 (1974); citations

omitted).

The Sixth Amendment guarantees a defendant the right to confront his accusers.

However, concomitant the right to present relevant testimony is not absolute and may be limited

by the trial court to "'accommodate other legitimate interests in the criminal trial process.'" *Rock*

*v. Arkansas*, 483 U.S. 44, 55 (1987) (quoting *Chambers v. Mississippi*, 410 U.S. 284, 295

(1973)); *see also Taylor v. Illinois*, 484 U.S. 400, 410-13 (1988) (stating that right to

cross-examination is not absolute). As the Supreme Court has explained, "'trial judges retain

wide latitude' to limit reasonably a criminal defendant's right to cross-examine a witness 'based

on concerns about, among other things, harassment, prejudice, confusion of the issues, the

witness' safety, or interrogation that is repetitive or only marginally relevant.'" *Michigan v. Lucas*, 500 U.S. 145, 149 (1991) (quoting *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)).

On cross-examination, defense counsel elicited from Scott that she was at a juvenile detention center because, among other reasons, she had a "PINS (Person In Need of Supervision) warrant" in June 1994. T.320.[2] The judge sustained the prosecutor's objection to defense counsel's attempt to question Scott about the fact that she could not be found in Rochester in January 1994 and that her absence "violated" her PINS warrant. The court agreed that the PINS was not a criminal petition and was not relevant. T.321. Defense counsel then questioned her, without objection, about her drug use. When Scott denied using drugs, counsel moved on to another line of questioning; he did not seek to impeach her with extrinsic evidence. T.322. Defense counsel then elicited from Scott that on December 20, 1995, she ran away from the non-secure detention center into which she had been placed. T.322-23. Scott also admitted that she deliberately absented herself from a court appearance in Family Court by fleeing down the back stairs. T.324. None of these questions were met by objections from the prosecutor.

The court did limit defense counsel's questioning of Scott concerning her alleged relationship with co-defendant Coffie. Scott answered in the negative when counsel asked her whether she had ever had a romantic relationship with Coffie. T.326. However, defense counsel then asked her, "[D]id there ever come a time when you were in bed with Marvin Coffie?" The trial court correctly sustained the prosecutor's objection T.327. As the prosecutor observed, since Scott had already given testimony implicating all three co-defendants, including Coffie, defense counsel's question was improper. *Id.* Defense counsel next asked Scott if she was

---

[2] Citations to "T.__" refer to the trial transcript.

pregnant. The trial court sustained the prosecutor's objection and struck the question from the

record. This Court does not believe that the question was necessarily improper. Had Scott

answered yes, trial counsel's next question should have been whether Coffie was the father, thus

suggesting a possible strong bias in favor of Coffie and against Walker. There is no evidence on

the record that defense counsel asked the trial judge to reconsider or that he made an offer of

proof concerning the questions.   The Confrontation Clause only guarantees "an *opportunity* for

effective cross-examination, not cross-examination that is effective in whatever way, and to

whatever extent, the defense might wish." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986)

(quoting *Delaware v. Fensterer*, 474 U.S. 15, 20 (1985) (*per curiam*) (emphasis in original). *See*

*also Ohio v. Roberts*, 448 U.S. 56, 73, n. 12 (1980) (noting that except in "extraordinary cases,

no inquiry into 'effectiveness' [of cross-examination] is required").   "[T]rial judges retain wide

latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on . . .

cross-examination based on concerns about, among other things, harassment, prejudice,

confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally

relevant." *Van Arsdall*, 475 U.S. at 679. Generally speaking, the defendant's right to confront his

accusers "is satisfied if defense counsel receives wide latitude at trial to question witnesses."

*Pennsylvania v. Ritchie*, 480 U.S. 39, 51 (1987) (citation omitted). Even though this Court may

disagree with the trial judge's ruling, it cannot find that the limitations on defense counsel's

cross-examination of Scott were unreasonable, in the absence of any effort by defense counsel to

press the point.

　　　　Upon the Court's review of the transcript, it is clear that defense counsel in fact was able

to question Scott about her history of drug usage, her proceedings in Family Court, and her

alleged relationship with Coffie. Contrary to petitioner's contention, it does not appear that Scott had a criminal history. Counsel was able to make his point that Scott was a troubled young woman who had been involved with some unsavory characters. The questions that he was precluded from asking were not relevant and the trial court was well within its discretion in so limiting the cross-examination. *See Michigan v. Lucas*, 500 U.S. at 149. Thus, no violation of Walker's Sixth Amendment rights has occurred.

## CONCLUSION

For the reasons stated above, petitioner Darnell Walker's petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the petition is dismissed.  Because petitioner has failed to make a substantial showing of a denial of a constitutional right, I decline to issue a certificate of appealability. *See* 28 U.S.C. § 2253.

**IT IS SO ORDERED**

/s/ *Victor E. Bianchini*

_____

VICTOR E. BIANCHINI
United States Magistrate Judge

DATED:       April 17, 2006
             Buffalo, New York.